UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Angel Porter**<br>4405 First Place, NE, #3<br>Washington, DC 20011<br><br>           **Plaintiff,**<br>**v.**<br><br>**Pinkerton Government Services, Inc.**<br>6850 Versar Center<br>Springfield, VA  22151<br><br>Serve the Registered Agent:<br><br>     National Registered Agent of MD<br>     836 Park Ave., 2nd Floor<br>     Baltimore, MD 21201<br><br>           **Defendant.**<br>_____ | Case No. _____<br><br><br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

**COMPLAINT**
**AND DEMAND FOR JURY TRIAL ON ALL ISSUES**

COMES NOW Angel Porter (hereinafter "Plaintiff"), by and through her undersigned counsel, alleges against Pinkerton Government Services, Inc. (hereinafter "Defendant") claims including violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, violation of the Federal Civil Rights Act of 1866, 42 U.S.C. § 1981, the tort of Invasion of Privacy, and violations of the Family and Medical Leave Act ("FMLA"). Plaintiff sets forth the facts, claims and seeks relief as follows:

**JURISDICTION AND VENUE**

1.   This court has original jurisdiction pursuant to 28 U.S.C. § 1331, federal question jurisdiction.

1

2. This court also has jurisdiction pursuant to 28 U.S.C. § 1332, under diversity jurisdiction as Plaintiff resides in the District of Columbia, and Defendant's principal place of business is in Virginia. Additionally, the amount in controversy exceeds $75,000.

3. Venue in this court is proper pursuant to 28 U.S.C. § 1391 as Plaintiff is a resident of the District of Columbia, and Defendant does business in the District of Columbia and thus satisfies the personal jurisdiction requirement.

## PARTIES

4. Plaintiff is a natural person and a resident of the District of Columbia.

5. Defendant is a corporation specializing in security and emergency services for government agencies. It is incorporated in Delaware and headquartered in Springfield, Virginia. Defendant contracts with the United States Government to provide security services at various places throughout the Washington, DC metropolitan area.

## FACTUAL ALLEGATIONS

6. Plaintiff is an African-American Female.

7. Plaintiff started employment with Defendant as a security guard in October of 2008 and was contracted out to work for TASC, Inc.

8. While employed by Defendant, Plaintiff received multiple recommendations and compliments for the quality of her work, including several recommendations for a promotion by TASC management.

9. Despite the recommendations, compliments, her strong background in security, and the fact that she was already training people that were going to be her new supervisors, and filling in as a supervisor when her superiors were out, she was never given a promotion.

10. This was true, despite the fact that Plaintiff was fully qualified and interviewed for a supervisor position four times during her employment with Defendant - in 2010, in 2011, and in 2012 – and was rejected.

11. Of the four times she interviewed with Defendant for a supervisor position, three times a white female was selected, and another time an Asian male was selected.

12. In May 2012, not long after being hired, the Asian male was terminated from his position and Plaintiff was again asked to perform the duties of the position.

13. Plaintiff had hoped that this time she would receive the promotion, but was specifically told by Defendant that she would not be hired due to her race, as they were looking for a "bright face," adding "you know what I mean by that."

14. In December 2011, Plaintiff was scheduled to have a surgical procedure related to a hernia, providing an adequate doctor's note and FMLA certification for the procedure, to which she was approved for leave by Defendant.

15. Two days prior to her surgery, her Branch Manager began harassing her and continuously called her home several hours prior to her shift starting, telling her that she was not allowed to take off for the procedure, despite Human Resources' approval.

16. When she got to work that day, an employee of TASC, Inc. gave Plaintiff a fax that had been left on the fax machine, which was from the Site Supervisor, Ms. Persell, to a Branch Manager, Mr. Evans, stating: "FYI…She is going for something she wants not something required. Did my homework."

17. Plaintiff then learned that Defendant had called her doctor's office to inquire about her surgery and attempt to obtain personal information about Plaintiff. When confronted

about this, Branch Manager, Mr. Paczek, confirmed that he had made such phone calls and acknowledged that it was illegal to do so.

18.     As a result of the harassment and threatened job loss if she were to have the surgery at that time, Plaintiff had to cancel the needed surgery for the time being.

19.     Plaintiff became fed up with the behavior of Defendant as Mr. Paczek had previously called her son's doctor on multiple occasions and the hospital where he had been admitted for asthma complications, to obtain information about his condition, when she was required to miss work as a result.

20.     Aside from the invasion of privacy by calling the doctor's office that was doing Plaintiff's surgery, Defendant relayed to the other employees that Plaintiff was actually having a tummy tuck done, which was not true. Other co-workers began to make fun of her for it.

21.     As such Plaintiff filed a formal complaint about the harassment and invasion of privacy on or about December 27, 2011 against both Mr. Paczek and Ms. Persell.

22.     Clearly unhappy with the complaint being filed, Mr. Paczek began trying to fine reasons to reprimand Plaintiff by calling other co-workers to ask about things like Plaintiff's uniform, work, etc. Additionally, Ms. Persell began to stop verbally communicating with Plaintiff and instead left multiple demeaning sticky notes to relay things.

23.     On January 4, 2012, Plaintiff was so emotionally distressed about her job conditions that she had to call out of work for her mental health. Ms. Persell jumped on that and issued a reprimand that day for calling out, despite the fact that Plaintiff brought a doctor's note.

24.     Then, on January 11, 2012, Plaintiff received an unsatisfactory inspection report from Defendant, which had never happened before, as she broke her belt on the shift and was not wearing it by the end of the shift.

25. On or about mid-February 2012, Plaintiff was authorized and did have the required surgery, which further upset Mr. Paczek and Ms. Persell who had originally attempted to disallow the surgery.

26. After dealing with the hostile environment for quite some time and definitively being told in May 2012 that she would not be promoted due to her race, Plaintiff was forced to resign on or about June 1, 2012. In her resignation letter, she explained that she was being forced to leave due to discrimination, retaliation, hostile work environment, and invasion of privacy.

27. Thereafter, Plaintiff still experienced retaliation by Defendant, who withheld her last paychecks, which were only released after obtaining counsel who submitted a demand letter.

28. Shortly thereafter, Plaintiff filed a discrimination charge with the EEOC.

29. After trying and failing to resolve this matter at the EEOC, Plaintiff exhausted her administrative remedies and asked for a Right to Sue Letter from the EEOC.

30. Plaintiff received her Right to Sue Letter and proceeded to file this suit within 90 days.

## COUNT I – DISPARATE TREATMENT DISCRIMINATION

31. Plaintiff re-alleges and incorporates the allegations of the previous paragraphs as if fully set forth herein.

32. In order to establish a *prima facie* case of disparate treatment discrimination under Title VII, plaintiff must establish that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002) (internal citation omitted).

33. Plaintiff is a member of a protected class (African-American).

34. Plaintiff suffered an adverse employment action both by her constructive discharge and also by her lack of promotions.

35. The unfavorable actions give rise to an inference of discrimination as she was told she was not being promoted because of her race, other individuals who were not in the Plaintiff's protected class and were not as qualified as the Plaintiff were chosen for the positions instead, and the hostile environment was only attributed to her, and not members outside of her protected class.

## COUNT II – HOSTILE WORK ENVIRONMENT

36. Plaintiff re-alleges and incorporates the allegations of the previous paragraphs as if fully set forth herein.

37. In order to establish a *prima facie* case of a hostile work environment under Title VII, plaintiff must demonstrate that she "(1) is a member of a protected class; (2) was subjected to unwelcome harassment; (3) the harassment occurred because of the plaintiff's protected status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassment, but nonetheless failed to take steps to prevent it." *Abdelkarim v. Tomlinson*, 605 F. Supp. 2d 116, 121 (D.D.C. 2009) (citing *Baloch v. Norton*, 355 F. Supp. 2d 246, 259 (D.D.C. 2005)).

38. Plaintiff is a member of a protected class (African-American).

39. The harassment Plaintiff was subjected to, which ranged from continuous phone calls, invasion of privacy, to supervisor's lack of speaking to her among other things, was unwelcome.

40. The harassment was because of her protected status as no similarly situated non-African-Americans were subjected to such harassment.

41. The harassment affected a term, condition, or privilege of employment as she was forced to quit, denied promotions, and dreaded having to go to that environment on a regular basis.

42. Defendant knew or should have known about the harassment as Plaintiff complained about it to human resources and the harassment was done by more than one of her supervisors and co-workers.

### COUNT III - RETALIATION

43. Plaintiff re-alleges and incorporates the allegations of the previous paragraphs as if fully set forth herein.

44. In order to establish a *prima facie* case of retaliation under Title VII, an employee must show that the employee engaged in a protected activity, that the employee suffered adverse employment decisions, and that there was a causal connection between the protected activity and the adverse employment action. *See Carter-Obayuwana v. Howard University*, 764 A.2d 779 (D.C. 2001).

45. Plaintiff engaged in a protected activity by reporting the harassment and invasion of privacy to Human Resources and cited it in her resignation letter.

46. Plaintiff suffered adverse employment decisions as she received a reprimand merely a week after submitting her Complaint to HR, and then had an unsatisfactory report from Defendant about a week after that, neither of which were warranted. Additionally, she was denied a promotion shortly thereafter and then was forced to resign not long after that as she was told she would never be promoted.

47. There is a causal connection between her protected activity and the adverse employment decisions are close in time and proximity.

## COUNT IV – UNLAWFUL DISCRIMINATION IN VIOLATION OF THE FEDERAL CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

48. Plaintiff re-alleges and incorporates the allegations of the previous paragraphs as if fully set forth herein. The Supreme Court recently stated in Domino's Pizza, Inc. v. McDonald, 546 U.S. 470 at 475 (2006), that:

> Among the many statutes that combat racial discrimination, § 1981, originally § 1 of the Civil Rights Act of 1866, 14 Stat. 27, has a specific function: It protects the equal right of "all persons within the jurisdiction of the United States" to "make and enforce contracts" without respect to race. The statute currently defines "make and enforce contracts" to "include the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b).

49. Plaintiff's right to make and enforce a contract has been infringed.

50. Plaintiff is a member of a protected class (African-American).

51. Plaintiff suffered an adverse employment action as she was denied promotions and was constructively discharged because of her race.

52. Despite Plaintiff's credentials, experience, duties, and responsibilities, Plaintiff was denied the right to equal treatment by Defendant as a result of her race (African-American), being denied promotions, being subjected to a hostile work environment, and being constructively discharged as a result.

53. Defendant acted in a discriminatory manner that a reasonable person would find objectively unreasonable.

54. Defendant authorized, directed, and participated in this discriminatory conduct.

## COUNT V – INVASION OF PRIVACY

55. Plaintiff re-alleges and incorporates the allegations of the previous paragraphs as if fully set forth herein.

56. Restatement of Torts states that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject

to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B (1977).

57. Defendant invaded Plaintiff's privacy when they intruded into Plaintiff's private matters, without her consent, by investigating her medical conditions and needs, along with her son's medical condition and needs, causing her great distress.

58. Plaintiff's privacy was thus further invaded when Paul Paczek continuously called Plaintiff, including six times in the morning one day, to prevent her from taking time off to have surgery.

59. Plaintiff's privacy was thus further invaded when Defendant disseminated Plaintiff's medical information to Plaintiff's co-workers, and leaving a fax regarding medical information on the client's fax machine for anyone to see. Moreover, soon after, many of Plaintiff's co-workers knew inaccurate and intimate details about her medical condition, causing her great distress and embarrassment.

### COUNT VI – VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

60. Plaintiff re-alleges and incorporates the allegations of the previous paragraph as if fully set forth herein.

61. The Family and Medical Leave Act prohibits the employer from interfering with the employee's attempt to exercise her rights under the Act. See 29 U.S.C. § 2615. Regulations promulgated under the Act also prohibit the employee's direct supervisor from contacting the employee's health care provider. See 29 C.F.R. § 825.307.

62. Defendant violated the Family and Medical Leave Act when they attempted to prevent Plaintiff from taking her already approved time off to have surgery.

63.     Defendant also violated the Family and Medical Leave Act when Plaintiff's supervisor contacted her physician to obtain Plaintiff's medical information and inquire about the surgery.

## COUNT VII – RETALIATION IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

64.     Plaintiff re-alleges and incorporates the allegations of the previous paragraphs as if fully set forth herein.

65.     The FMLA prohibits employers from discriminating or retaliating against employees for trying to exercise their rights under the Act.  See 29 U.S.C. § 2615(a)(1)-(2); 29 C.F.R. § 825.220.  The employer is, for example, prohibited from "retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights."  29 C.F.R. § 825.220(c).

66.     In order to establish a retaliation claim under the FMLA, "a plaintiff must establish: '(1) that [s]he engaged in a statutorily protected activity; (2) that the employer took adverse personnel action; and (3) that a causal connection existed between the two.'"  *See, e.g., Franklin v. Pepco Holdings, Inc.*, 875 F. Supp. 2d 66, 73 (D.D.C. 2012) (internal citation omitted).

67.     Plaintiff engaged in a statutorily protected activity by requesting and attempting to take FMLA leave in December 2012, and by actually taking the leave in February 2012.

68.     Additionally, Plaintiff engaged in a statutorily protected activity by complaining to Human Resources about the hostile work environment and invasion of privacy related to her FMLA request.

69. Defendant took adverse personnel action against Plaintiff as a result of this requested and subsequent leave, by threatening her job if she took the leave, and telling her she was not allowed to take it, although it was already approved, causing her to reschedule her surgery. Additionally, shortly after her leave request, she received a letter of reprimand, and an unsatisfactory report from the Defendant, which had not previously occurred. Further, she was told she would never be promoted in May 2012, shortly after finally taking her FMLA leave.

70. In addition, Defendant's adverse actions of issuing a reprimand and an unsatisfactory report took place shortly after Plaintiff submitted her complaint to HR and even involved the very same people against whom Plaintiff complained.

71. A causal connection exists between the protected activities and the adverse personnel actions as they are close in time and proximity to the protected activities and involved the same people against whom Plaintiff complained.

WHEREFORE, Plaintiff, Angel Porter, prays for judgment against Defendant for not less than $1 million as follows:

    a. That judgment be entered in her favor against Defendant;

    b. For liquidated damages for her salary and difference in salary had she been promoted in an amount to be proven at trial;

    c. For unliquidated damages for pain and suffering in an amount to be proven at trial;

    d. For other general and special damages in an amount to be proven at trial;

    e. For punitive damages in an amount sufficient to punish and set an example of the Defendants;

    f. For attorney's fees and other costs of brining suit;

g. For prejudgment interest;

h. For such other relief that the court deems just and proper.

## REQUEST FOR JURY TRIAL

Plaintiff respectfully requests that all matters contained in this Complained be tried by Jury.

Respectfully Submitted,

THE BEZDICEK LAW FIRM

Dated: July 27, 2013

By:

_____
Jennifer L. Bezdicek, Esq. [Bar 979041]
20 F Street NW, Suite 700
Washington, DC 20001
(202) 617-0707
jbezdicek@bezdiceklaw.com