UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANGEL PORTER,

   Plaintiff,

 v.            Civil Action No. 13-1141 (GK)

PINKERTON GOVERNMENT
SERVICES, INC.,

   Defendant.

## MEMORANDUM OPINION

Plaintiff Angel Porter ("Plaintiff") brings this case against Pinkerton Government Services, Inc. ("Defendant") for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, the Civil Rights Act of 1866, 42 U.S.C. § 1981, and her common law right to privacy.

Pending before the Court are Plaintiff's Motion to Quash Defendant's Subpoena Directed to Ivy Plastic Surgery Associates [Dkt. No. 17] and Plaintiff's Motion to Quash or Modify Defendant's Subpoena for Testimony of an Employee of Ivy Plastic Surgery Associates [Dkt. No. 18]. Upon consideration of the Motions, Oppositions, and Replies, and the entire record herein, and for the reasons stated below, the Motions shall be **granted in part** and **denied in part**.

I.  **BACKGROUND**

   A.  **Factual Background**[1]

   Defendant is a company specializing in security and emergency services for government agencies. FAC ¶ 5. Plaintiff, who is African American, was employed by Defendant as a security guard from 2008 until June 2012. FAC ¶¶ 6-8. During that time, she was assigned to work for TASC, Inc., whose management gave her multiple compliments for the quality of her work and frequent recommendations for a promotion. FAC ¶¶ 8-9. Plaintiff interviewed for a supervisor position with Defendant on at least four occasions, but despite the positive feedback from TASC, Inc., "her strong background in security, and the fact that she was already training people that were going to be her new supervisors," Plaintiff was not hired. Plaintiff claims she was specifically told by her supervisors that the reason she would not be hired was that they were looking for a "bright face." FAC ¶ 12. The positions were filled instead by three white women and an Asian man. FAC ¶¶ 10-12.

   Plaintiff also alleges that, in December 2011, she received approval from Defendant's Human Resources Department for medical leave to have a surgical procedure on her stomach. The surgery

---

[1] The facts are taken from the First Amended Complaint ("FAC") [Dkt. No. 11].

-2-

was to be performed by Ivy Plastic Surgery Associates ("Ivy Associates"). Two days before the surgery, however, Plaintiff's Site Manager, Ms. Persell, and Branch Manager, Mr. Paczek, began to harass her about taking the time off from work, even though her request for medical leave had already been approved by the Human Resources Department. FAC ¶¶ 13, 15. Mr. Paczek allegedly took it upon himself to contact Ivy Associates in an attempt to obtain information about the nature of her surgery, and he and Ms. Persell subsequently told Plaintiff's co-workers that she was having a "tummy tuck," causing her humiliation and embarrassment. FAC ¶¶ 14, 16-17, 20. This was not, according to Plaintiff, the first time Mr. Paczek investigated her personal affairs. He also contacted her son's doctor on several prior occasions when she missed work as a result of her son's asthma. FAC ¶ 19.

On December 27, 2011, Plaintiff filed a formal complaint of harassment and invasion of privacy against Mr. Paczek and Ms. Persell. Thereafter, Mr. Paczek and Ms. Persell ceased verbally communicating with her and began looking for reasons to fault and reprimand her, including "by calling other co-workers to ask about things like Plaintiff's uniform, work, etc." FAC ¶ 22.

Plaintiff asserts that "[a]fter dealing with this hostile

environment for quite some time and definitively being told in 2012 that she would not be promoted due to her race," she "was forced to resign on or about June 1, 2012." FAC ¶ 26.

**B.    PROCEDURAL BACKGROUND**

On July 27, 2013, after exhausting her administrative remedies with the EEOC, Plaintiff filed this case. On December 2, 2013, she filed her FAC [Dkt. No. 11], which asserts claims for invasion of privacy, disparate treatment, hostile work environment, retaliation, and discrimination in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981. On December 16, 2013, Defendant filed its Answer, generally denying Plaintiff's allegations and asserting, as an affirmative defense, a qualified privilege to "investigate the circumstances surrounding Plaintiff's December 2011" request for medical leave and "to disclose to its management staff and its employees any factual information related to Plaintiff's effort to take time off work in December 2011." See generally Answer [Dkt. No. 11]; id. at Tenth and Eleventh Affirmative Defenses.

On February 10, 2014, Defendant served two subpoenas: one on Ivy Associates seeking production of Plaintiff's medical records and the other commanding Ivy Associates Patient Coordinator Adrienne Harvill to testify at a deposition. On

April 1, 2014, Plaintiff filed her Motion to Quash Defendant's Subpoena Directed to Ivy Plastic Surgery Associates ("Ivy Mot.") [Dkt. No. 17] and her Motion to Quash or Modify Defendant's Subpoena for Testimony of an Employee of Ivy Plastic Surgery Associates ("Harvill Mot.") [Dkt. No. 18]. On April 14, 2014, Defendant filed its Opposition to the Ivy Motion ("Opp'n to Ivy Mot.") [Dkt. No. 20] and its Opposition to the Harvill Motion ("Opp'n to Harvill Mot.") [Dkt. No. 19]. On April 21, Plaintiff filed her Reply in further support of the Ivy Motion ("Ivy Reply") [Dkt. No. 21] and her Reply in further support of the Harvill Motion ("Harvill Reply") [Dkt. No. 22].

## II. LEGAL STANDARD

"[I]t is settled that a subpoena is limited in scope by Rule 26(b)(1) of the Federal Rules of Civil Procedure." Coleman v. D.C., 275 F.R.D. 33, 36 (D.D.C. 2011) (citations omitted). Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. This definition is broadly construed for purposes of discovery.

-5-

Food Lion v. United Food & Commercial Workers Int'l Union, 103 F.3d 1007, 1012 (D.C. Cir. 1997).

"Rule 45 also supplies the standards under which district courts assess . . . objections to a subpoena." Watts v. S.E.C., 482 F.3d 501, 508 (D.C. Cir. 2007). "The rule requires that district courts quash subpoenas that call for privileged matter or would cause an undue burden." Id.; see also Fed. R. Civ. P. 45(d)(3)(A)(iii). Thus, as our Court of Appeals has held:

> if the documents under subpoena are relevant to the subject matter of the proceeding for which their production is sought, the subpoena should be enforced on a showing of good cause unless the documents are privileged or the subpoena is unreasonable, oppressive, annoying, or embarrassing. And if the District Court believes the subpoena has a meritorious basis but should not be enforced as drafted, . . . it has authority under Rule 30(b) to modify the subpoena and impose such conditions on enforcement as justice may require.

Freeman v. Seligson, 405 F.2d 1326, 1334-35 (D.C. Cir. 1968)

### III. DISCUSSION

In both subpoenas, Defendant seeks the following eleven categories of information:

> (1) Any and all documents related to Angel Porter's counseling, treatment, surgery or other procedures, including, but not limited to, intake, progress notes, examinations, testing, surgical notes, post-op notes and any remaining documents kept in any files related to Angel Porter;

(2) Any and all documents related to any medications or supplements that Angel Porter was prescribed or recommended to take;

(3) Any and all documents related to any statements from Angel Porter regarding her symptoms or medical problems;

(4) Any and all documents related to any statements from Angel Porter regarding the counseling or treatment she received;

(5) Any and all documents related to any diagnoses of Angel Porter;

(6) Any and all documents related to results from any examinations, tests, surgeries or procedures conducted in connection with Angel Porter;

(7) Any and all documents related to any instructions that Angel Porter was given;

(8) Any and all documents related to any medical, outpatient, or other services received by Angel Porter;

(9) Any and all documents related to any conversations between Angel Porter and Adrienne Harvill;

(10) Any and all documents related to telephone inquiries that Adrienne Harvill or any employee or doctor of Ivy Associates may have had with any person who inquired at any point in time about Angel Porter or about the types of medical procedures or surgeries performed by Ivy Associates as part of its medical practice; and

(11) Any and all documents related to Angel Porter's employment with Pinkerton Government Services, Inc. and/or medical leave that she may have requested or taken in the time frame covering January 2011 through June 20, 2012.

See Ivy Mot., Ex. 1 [Dkt. No. 17-1]. Defendant also seeks to depose Harvill about these topics. See Harvill Mot., Ex. 1.

**A. Relevance**

"When confronted with a discovery demand to which an objection has been made, the Court must first ascertain whether there is a reasonable likelihood or possibility that the information sought may be relevant to a claim or defense or likely to lead to such evidence." St. John v. Napolitano, 274 F.R.D. 12, 15 (D.D.C. 2011) (citation and internal punctuation omitted).

As discussed, in her FAC, Plaintiff alleges that, in December 2011, Mr. Paczek and Ms. Persell intruded into her personal affairs by "call[ing] her doctor's office to inquire about her surgery," even though she had already obtained approval for medical leave from the Human Resources Department. FAC ¶¶ 13-15, 17. Thus, categories 10 and 11 of the subpoena, which seek information related to Mr. Paczek's alleged telephone inquiries to Ivy Associates and Plaintiff's request for medical leave, are directly relevant to Plaintiff's allegations.[2]

---

[2] Plaintiff appears to concede as much by acknowledging that "Defendant's communications with Plaintiff's health care provider Ivy [are] at issue, and . . . [are] important to establish what information about Plaintiff and her scheduled

-8-

As to the remaining categories of information, Defendant claims that they are relevant to (1) the merits of her claims, (2) her credibility, and (3) her assertion of emotional distress as an element of damages. It explains that Plaintiff "initially claimed that she needed the surgery for an appendectomy," which her supervisors believed to be untrue upon learning "that the designated surgeon worked with a medical practice – Ivy Plastic Surgery Associates – specializing in plastic surgery." Opp'n to Ivy Mot. at 2. Defendant contends that the true nature of Plaintiff's procedure is relevant to whether the surgery was elective and thus could be rescheduled to a less busy time of year, and "whether her supervisors' inquiries about her surgical status were motivated by reasonable and legitimate business concerns." Id. at 1-2.

The Court agrees with Defendant that these issues reflect upon Plaintiffs' employment relationship with her supervisors and, therefore, are relevant to her claims of harassment and discrimination under Title VII. The accuracy of Plaintiff's representations to her supervisors is also relevant to credibility and Plaintiff's claim of emotional distress as an element of damages. See, e.g., Barnett v. PA Consulting Group,

---

procedure Defendant attempted to obtain and what information was exchanged between Defendant and Ivy." Ivy Reply at 2-3.

Inc., No. 04-1245, 2007 WL 845886, at *4 (D.D.C. Mar. 19, 2007) ("[A] defendant is entitled to explore whether causes unrelated to the alleged wrong contributed to plaintiff's claimed emotional distress, and a defendant may propound discovery of any relevant medical records of plaintiff in an effort to do so.") (internal quotation marks and citation omitted). In sum, the requested information relevant.

**B. Privilege**

Relevance does not, however, end the analysis. Even if the information is relevant, the subpoenas must still be quashed or modified if they are unduly burdensome or require "disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv); see In re England, 375 F.3d 1169, 1177 (D.C. Cir. 2004) (if there is a valid statutory privilege "information may be withheld, even if relevant to the lawsuit and essential to the establishment of plaintiff's claim") (citation omitted).

Federal law governs a claim of privilege in federal courts except in a civil case "regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. In this case, it is unclear whether federal privilege law or state privilege law applies because Plaintiff brings claims

under both bodies of law. See In re Sealed Case (Med. Records), 381 F.3d 1205, 1212 (D.C. Cir. 2004) (observing that the choice of law inquiry under Rule 501 is unclear "where the plaintiffs assert both federal and state claims, and relevant evidence may be privileged under one but not the other").

The Court need not, however, decide this question because Defendant has not contested Plaintiff's assertion that District of Columbia law governs. Therefore, the Court may treat the applicability of District of Columbia law as conceded. See, e.g., A Love of Food I, LLC v. Maoz Vegetarian USA, Inc., 292 F.R.D. 142, 143 (D.D.C. 2013) ("[T]he Court may treat [a party's] failure to oppose [an opponent's] . . . arguments as a decision to concede those arguments.") (quoting Nat'l Sec. Counselors v. C.I.A., 898 F. Supp. 2d 233, 268 (D.D.C. 2012) (quotation marks omitted)).

D.C. Code § 14-307(a) states:

> In the Federal courts in the District of Columbia . . . a physician . . . may not be permitted, without the consent of the person afflicted, or of his [or her] legal representative, to disclose any information, confidential in its nature, that he [or she] has acquired in attending a client in a professional capacity and that was necessary to enable him [or her] to act in that capacity[.]

D.C. Code § 14-307(a). This provision "prevents a physician from testifying about a patient's medical condition in court

-11-

without the patient's consent" and also protects against "the release of information during the pretrial discovery phase." Kuhn & Kogan, Chtd. v. Jeffrey C. Mensh & Associates, Inc., 77 F. Supp. 2d 52, 56 (D.D.C. 1999) (citations omitted). Defendant does not dispute that this language covers the medical records requested by the subpoenas. Therefore, under Rule 45(d)(3), the subpoenas must be quashed or modified unless Plaintiff has waived the privilege.

**C.  Waiver**

Under District of Columbia law, a "patient may waive or be deemed to have waived the physician-patient privilege . . . by filing a lawsuit which places in issue the patient's medical condition." Nelson v. United States, 649 A.2d 301, 308 (D.C. 1994) (citations omitted). As the Court of Appeals for the District of Columbia observed in Nelson, waiver is based on the principle that "[a] patient-litigant may not authorize disclosure of only those portions of the medical records favorable to that party's position, while withholding other relevant portions which are unfavorable." Id. at 308-09 (citations omitted). At the same time, the Nelson court expressly rejected the proposition that "a general waiver" occurs by mere "implication of any medical information" in the

lawsuit. Id. at 309. Instead, "[W]aiver determinations are to be carefully scrutinized" in relation to "the facts and circumstances of the particular case." Id.

Our Court of Appeals has also provided helpful guidance for assessing waiver. In Koch, 489 F.3d at 382, which concerned an asserted waiver of the psychotherapist-patient privilege, it held that the waiver doctrine must be applied in such a way that it "does not eviscerate the privilege," but merely gives effect to the principle that a party may not "employ privileges both as a sword and as a shield." Koch, 489 F.3d at 382 (citation and quotation marks omitted). The proper inquiry, the Court of Appeals observed, is not whether "there is a particular evidentiary need for disclosure," but whether the opposing party has somehow relied on the privileged information in asserting a claim or defense. See id. at 381-83. Thus, a plaintiff may be deemed to have waived the privilege to the extent she "relies upon the [provider's] diagnoses or treatment in making or defending [her] case" or "selectively discloses part of a privileged communication in order to gain an advantage in litigation." Id. at 381-82 (citations and quotation marks omitted).

With these principles in mind, the Court considers whether Plaintiff has waived the physician-patient privilege with respect to the information at issue.

### 1. Subpoena Categories 10 and 11

As discussed above with respect to Category 10 of the subpoenas, Plaintiff has specifically alleged that her supervisors "called her doctor's office to inquire about her surgery and . . . obtain personal information about Plaintiff." FAC ¶ 17. Consequently, Plaintiff has put these phone calls at issue and waived any privilege that would otherwise apply to both the phone calls themselves and any related documents or records of such calls.

With respect to category 11, Plaintiff alleges that her supervisors harassed her about taking time off to have the surgery even though her leave request had already been approved by the Human Resources Department. FAC ¶¶ 13-14. By so alleging, Plaintiff has put the approval of her leave request, and any records and communications underlying that approval, at issue. Thus, she is also deemed to have waived the privilege over any information in Ivy Associates' custody that specifically pertains to her request for medical leave.

## 2. Subpoena Categories 1-9

Defendant's only argument for disclosure of the information in Categories 1-9 of the subpoena is that Plaintiff has put her medical information at issue by claiming emotional distress as an element of damages.

District courts have adopted different approaches to assessing whether a plaintiff places her medical and mental health condition at issue merely by claiming emotional distress. See Koch, 489 F.3d at 382. Under the "narrow approach," a plaintiff only waives the privilege by affirmatively placing the substance of the privileged advice or communication directly in issue. Id. (citing Fitzgerald v. Cassil, 216 F.R.D. 632, 638 (N.D. Cal. 2003)). Under the "middle ground" approach, "where a plaintiff merely alleges 'garden variety' emotional distress and neither alleges a separate tort for distress, any specific psychiatric injury or disorder, or unusually severe distress, that plaintiff has not placed his/her mental condition at issue to justify waiver." Koch, 489 F.3d at 382 (citing Jackson v. Chubb Corp., 193 F.R.D. 216 (D.N.J. 2000)). Under the "broad" approach, "courts have held that a plaintiff places his or her medical condition at issue and waives the . . . privilege simply

by making a claim for emotional distress." St. John, 274 F.R.D. at 18 (citing Koch, 489 F.3d at 390).

Our Court of Appeals has not decided which, if any, of these approaches applies. However, courts in this District have adopted the "middle ground" approach "under which 'garden variety' emotional distress allegations are not deemed to waive privilege." St. John, 274 F.R.D. at 19 (citing Sims v. Blot, 534 F.3d 117 (2d Cir. 2008), Barnett v. PA Consulting Group, Inc., No. 04-1245 (RWR), 2007 WL 845886, at *3-4 (D.D.C. Mar. 19, 2007)). This Court also finds the middle ground approach to be reasonable and appropriate and shall adopt that approach.

Federal courts have used the following five factors to assess whether a plaintiff's claims for emotional distress are "garden variety" or more severe: (1) the presence of a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of a specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) a proffer of expert testimony to support a claim of emotional distress; and/or (5) a concession by the plaintiff that his or her mental condition is "in controversy." Id. at 119 (citation omitted).

None of these factors are present here: Plaintiff does not bring a cause of action for intentional or negligent infliction of emotional distress. She does not allege any specific psychiatric disorder or unusually severe emotional distress. She has specifically disclaimed any intent to rely on an expert to support her claim of emotional distress. See Ivy Reply at 5. Finally, she does not concede that her mental condition is "in controversy." Consequently, "there are no factors showing that the plaintiff has alleged more than 'garden variety' emotional distress of the kind an ordinary person might experience following an episode of discrimination." St. John, 274 F.R.D. at 20. Therefore, Plaintiff has not waived the privilege over her private medical records merely by claiming emotional distress.

Defendant has not otherwise addressed waiver in its Opposition. Consequently, the Court concludes that Plaintiff has waived the privilege as to categories 10 and 11 of the subpoenas but not as to the remaining categories. The subpoenas shall be modified to permit discovery solely of the information contained in categories 10 and 11.[3]

---

[3] The Court also concludes that categories 1 and 2 are overly broad and burdensome and thus are also subject to modification on those grounds. See Fed. R. Civ. P. 45(d)(3)(A)(iv).

### D. Lack of Proper Notice

Finally, Plaintiff also contends that the subpoenas must be quashed because Defendant failed to provide her with proper notice prior to serving them on Ivy Associates and Harvill. Although it is undisputed that Defendant's notice was deficient in certain respects, there is no indication that these deficiencies were intentional or prejudicial, and they certainly do not constitute grounds to quash under Rule 45(d)(3). Consequently, this request is **denied**.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motions are **granted in part** and **denied in part**, and the subpoenas shall be modified consistent with this Memorandum Opinion.

May 23, 2014

Gladys Kessler
United States District Judge

**Copies to**: attorneys on record via ECF